973 So.2d 1012 (2008)
Sam Henry WILLIAMS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01151-COA.
Court of Appeals of Mississippi.
January 29, 2008.
*1013 Edmund J. Phillips, Jason Avery Mangum, Newton, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, C.J., BARNES, and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. On the night of May 21, 2005, Sam Henry Williams shot and killed Virginia Ann Kidd at Williams's home. He was subsequently convicted of her murder. At trial, his motions for peremptory jury instructions, for a judgment notwithstanding the verdict, and for a new trial were denied. Additionally, the trial court excluded testimony concerning the potential for the weapon Williams used in the shooting to accidentally discharge under certain circumstances. Aggrieved, Williams appeals to this Court, asserting that: (1) the denials *1014 of his motions for peremptory jury instructions, for a judgment notwithstanding the verdict, and for a new trial were improper under Weathersby v. State; and (2) that the trial court erred in sustaining the State's objections to the admission of testimony concerning the potential for the murder weapon to accidentally discharge when striking a hard object. Finding no error with respect to the first issue, we affirm the judgment of the trial court. We find that the second issue is moot.

FACTS
¶ 2. Williams and Kidd had been in a continuing relationship for ten or eleven years and often spent the night together at Williams's home in Scott County, Mississippi. On the night of May 21, 2005, Williams and Kidd engaged in a heated argument at Williams's house over his refusal to drive Kidd to Newton, Mississippi. The argument lasted several hours, during which time Williams consumed some quantity of gin and Kidd allegedly used some quantity of crack cocaine. Around 11:00 p.m., Williams went to bed, and shortly thereafter Kidd entered the bedroom with a butcher knife. Although precisely what happened in the next few moments is unclear, after an exchange with Williams during which Kidd fell to the floor, she retreated toward the bathroom. At that point, Williams withdrew a loaded .22 caliber pistol from underneath his mattress and began walking toward the bathroom. Williams claims that he tripped and fell twice while holding the pistol. During the first fall, he claims that he accidentally cocked the pistol. During the second fall, he claims that he fell into the door frame and that the gun either discharged from the force, of the impact or that he accidentally pulled the trigger. What is not disputed is that the weapon discharged a single .22 caliber bullet that went straight through the left temple of Kidd's skull, killing her.
¶ 3. Shortly after the shooting, deputies from the Scott County Sheriffs Department arrived to investigate. They found Williams and one other person sitting on the front porch of Williams's home. When asked about the shooting, Williams admitted to it. He was arrested and taken into custody. Two days later, the deputies secured a Miranda waiver from Williams and interviewed him about the killing. During that interview, he stated that he withdrew the pistol from the mattress because he was afraid that Kidd might harm him with the butcher knife. During a subsequent interview, and after the deputies obtained another Miranda waiver, Williams cited his concern for Kidd's safety as his reason for removing the weapon from his mattress. In both interviews, he never denied that the pistol was cocked when it discharged, or that he was' holding the pistol when it discharged.
¶ 4. Williams was tried in the Circuit Court of Scott County in June of 2006 and convicted of murder. During the trial, Williams asserted that under the rule set out in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), he was entitled to a peremptory jury instruction. After the trial court's denial of that jury instruction and the return of a guilty verdict, Williams made motions for a judgment notwithstanding the verdict and a motion for a new trial, both based on the same Weathersby argument. The trial court denied both motions. Additionally, during trial the court sustained the State's objections to testimony offered by a sheriffs deputy over the possibility of the pistol accidentally discharging after striking a hard object when the pistol was not cocked. The rulings of the trial court concerning the Weathersby issues and the evidentiary issue *1015 give rise to Williams's appeal of his conviction for murder.

DISCUSSION
(1) The trial court's denial of appellant's motions for peremptory jury instructions, for a judgment notwithstanding the verdict, and for a new trial was proper.
¶ 5. Taken together, Williams's motions for a peremptory jury instruction, a judgment notwithstanding the verdict, and a new trial can be viewed as one single challenge to the weight and sufficiency of the evidence undergirding his conviction for murder. With respect to the sufficiency of the evidence, the standard of review is well-settled. This Court "must, with respect to each element of the offense, consider all of the evidencenot just the evidence which supports the case for the prosecutionin the light most favorable to the verdict." Gleeton v. State, 716 So.2d 1083, 1087(¶ 14) (Miss.1998). Additionally, "credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Id. This Court will reverse a trial court "only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty." id.
¶ 6. Regarding the weight of the evidence, "this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial" or "in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. . . ." Montana v. State, 822 So.2d 954, 967-68 (¶ 61) (Miss. 2002).
¶ 7. More specifically, Williams's assignments of error with respect to the weight and sufficiency of the evidence hinge on his assertion that, as a matter of law, his account of the events leading up to the shooting of Kidd should be presumed to be correct, and that therefore he cannot be found guilty of murder. He bases this argument on the Weathersby Rule. The Weathersby Rule holds that "[i]f the defendant's version of the killing is reasonable, it must, as a matter of law, be accepted as true, unless `substantially contradicted in material' particulars by a credible witness, . . . or by the physical facts or by facts of common knowledge." Blanks v. State, 547 So.2d 29, 33 (Miss.1989). The Weathersby Rule does not apply "where the defendant's version [of the killing] is patently unreasonable, or contradicted by physical facts." Id. Furthermore, a defendant is precluded from seeking the protection of the Weathersby Rule when he or she "following the slaying, gives conflicting versions of how the killing took place, or initially denies the act." Id. The defendant who meets the requirements of the Weathersby Rule is entitled to peremptory jury instructions or a directed verdict for acquittal, and an acquittal on appeal would be appropriate, if relief in the lower court were to be denied.
¶ 8. Williams, however, is not entitled to the relief requested in this appeal, because the circumstances of his case do not warrant Weathersby protection. In order for the Weathersby Rule to apply, Williams's account of the killing must not be contradicted by, among other things, his subsequent accounts of the killing. In fact, the testimony of the sheriffs deputies *1016 who interviewed Williams two different times after the killing occurred indicates that his account of the killing did change. In an interview conducted two days after the killing took place, Williams stated that he removed the gun from his mattress because he saw Kidd coming back down the hallway with the butcher knife, that he did not know what her intentions were, and that he was afraid of what she might do. In an interview conducted several weeks later, and at trial, Williams stated that he removed the pistol from the mattress for Kidd's safety. These conflicting versions of the killing alone are enough to deny Williams the protection of the Weathersby Rule.
¶ 9. Williams's conflicting statements regarding the killing, however, are not the only obstacle preventing him from gaining the protection of the Weathersby Rule. Forensic evidence concerning the trajectory of the bullet was introduced at trial that at least partially contradicted Williams's account of the killing. That evidence was enough to deny Williams an acquittal as a matter of law, and to put the decision regarding the disputed facts in the hands of the jury.
¶ 10. Consequently, under our standard of review in this case, and having given the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence introduced at trial, we find that there is sufficient evidence so that reasonable and fair-minded jurors could have returned a verdict of guilty. As to the weight of the evidence, after accepting as true the evidence that supports the verdict, we are unable to conclude that the verdict is so contrary to the great weight of the evidence that to allow it to stand would sanction an unconscionable injustice or an abuse of discretion on the part of the trial court. Therefore, the orders denying the motions for peremptory jury instructions, for a judgment notwithstanding the verdict, and for a new trial were proper and are affirmed.
(2) The trial court's exclusion of evidence relating to accidental discharge was proper.
¶ 11. Williams also claims that the trial court erred in excluding testimony of a sheriffs deputy concerning the potential for the pistol used in the shooting to discharge accidentally when striking a hard object. We need not reach the issue of whether the trial court erred because Williams failed to properly preserve this issue for appeal. Generally, "when a party seeks to offer evidence which in turn is excluded by the trial court, before a reviewing court will consider the matter on appeal the party must have somehow placed in the record the nature and substance of the proffered evidence for our consideration." Granger v. State, 853 So.2d 830, 833 (¶ 9) (Miss.Ct.App.2003) (citing Harris v. Buxton T.V., Inc., 460 So.2d 828, 833 (Miss.1984)). "When testimony is excluded at trial, a record must be made of the proffered testimony in order to preserve the point for appeal." Id. (citing Thompson v. State, 602 So.2d 1185, 1188 (Miss.1992)). No proffer of the content of the excluded testimony was made at trial in this case. We have not deviated from this rule in the past, and we see no reason to do so now. Therefore, this assignment of error is without merit.
¶ 12. However, even if a proffer of the evidence had been made, the trial court's refusal to admit the testimony regarding the potential for the weapon used in the killing to discharge accidentally when striking a hard object would not have been in error. We review questions concerning the admission or exclusion of evidence under an abuse of discretion standard. Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002).
¶ 13. In this case, the question just before the excluded testimony sought *1017 the deputy's opinion on the potential for the pistol to accidentally discharge when it was not cocked. In every account of the killing Williams gave, in interviews and at trial, he never denied that the pistol was cocked when it fired the fatal bullet. Therefore, any testimony concerning the propensity for pistols of that type to accidentally fire while not cocked would have been irrelevant, and the trial court would certainly not have abused its discretion in excluding that testimony. Therefore, even if Williams's claim regarding the excluded testimony was not moot, this Court would still be compelled to affirm the judgment of the trial court with respect to the excluded testimony.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY. OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SCOTT COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.