MODIFIED OPINION ON MOTION FOR REHEARING
 

 BARNES, J.,
 

 for the Court:
 

 ¶ 1. The motion for rehearing is denied. The previous opinion of this Court is withdrawn, and this opinion is substituted therefor.
 

 ¶ 2. Wanda Blakeney was convicted of two counts of murder after a jury trial in the Jones County Circuit Court and sentenced to serve two consecutive life sentences in the custody of the Mississippi Department of Corrections (MDOC). She now appeals her convictions and sentences. Finding no error, we affirm.
 

 
 *1004
 
 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. On July 10, 2006, at 4:55 a.m., Mississippi State Trooper Holt Ross was notified of a motor vehicle accident on U.S. Highway 84, west of Waynesboro, Mississippi. Trooper Ross arrived at the scene at 5:30 a.m. and spotted a vehicle approximately 300 feet down an embankment. In the vehicle were the deceased bodies of Willie and Anita Kitchens, the owners of the vehicle. Both occupants were wearing seatbelts, and the airbags had not deployed. The car’s gear shift was in neutral, and there was no sign of serious damage to the vehicle. The car was filled with smoke, and burned fireworks were in the back seat. Two containers of gasoline were found in the trunk, and containers of lighter fluid were also in the car. There were multiple bruises and burn marks on the bodies, which were later determined to be from a taser gun. Dr. Steven Hayne, an expert in forensic pathology who conducted the autopsy on Wñlie and Anita, concluded that they had died from manual strangulation.
 

 ¶4. Willie and Anita lived with their natural granddaughter, Blakeney, whom they had adopted as their daughter. Blakeney’s husband, John Christopher Paul Blakeney (Christopher), and the Blakeneys’ two children also lived at the home. At approximately 5:20 a.m. that morning, Blakeney phoned Carolyn McCree, her natural mother, and asked her to come to the house. Upon Carolyn’s arrival, Blakeney told her that Christopher had possibly killed Willie and Anita and had left with their bodies.
 
 [1]
 
 It was at this point that the police were contacted about the possible kidnapping/homicide. When law enforcement arrived, they noted several pieces of pink and yellow “confetti” on the floor of the Kitchenses’ bedroom, which were later determined to be from a taser gun.
 
 [2]
 
 There were no linens on the bed.
 

 ¶ 5. Later that morning, Blakeney was interviewed by Officer Matt Ishee of the Jones County Sheriffs Office. The interview was videotaped and lasted approximately thirty minutes. During that interview, Blakeney claimed that she thought Christopher may have killed Willie and Anita and taken their bodies by towing their car behind her vehicle. She noted during that interview that Christopher was an abusive husband and that she wanted to get away from him. She also accused Christopher of possible pedophile tendencies. She stated that she did not know exactly what had happened that morning, but that she was asleep and awoke to Anita’s screams at approximately 3:00 a.m. Christopher was not supposed to be in the house; he had been staying in Louisiana due to his job. She said that she was terrified and afraid to move but claimed that she attempted to pick up the phone; however, the line was in use. Soon thereafter, she said Christopher came into her bedroom wearing dark clothes and gloves and made her touch something small and black; she assumed it was a gun. Christopher left the house, and Blakeney went into her parents’ bedroom. There were no bodies present and no bed linens on the bed. There were also small yellow and pink fragments on the floor. Blakeney claimed that she then saw, through the window, Christopher leave in her vehicle. She said that he was driving her car, and
 
 *1005
 
 she presumed he was towing her parents’ car. She further stated that she thought Christopher might come back and harm her, explaining why she called Carolyn instead of the police after he left the home.
 

 ¶ 6. Immediately following the first interview, Blakeney was interviewed by Roy Clingon, an investigator with the Mississippi Bureau of Investigation.
 
 [3]
 
 According to Clingon’s trial testimony, Blakeney told him the same set of facts that she had given in the first interview. However, when questioned further about the time frame between the murders and the 9-1-1 call, it became apparent to the investigator that Blakeney was a suspect. Blakeney was administered her
 
 Miranda
 
 rights, which she waived. She proceeded to change her story and confessed that she did, in fact, assist Christopher in disposing of Willie’s and Anita’s bodies by driving her vehicle to pick up Christopher after he ran the Kitchenses’ car off the road. Blakeney was interviewed a third time, three days later, by Officer Ishee.
 
 [4]
 
 At this interview, Blakeney was again given a
 
 Miranda
 
 warning, and she signed a waiver of her rights. It had been discovered that Blakeney had taken approximately $23,000 from a joint checking account that she held with Willie and Anita, during the period of February 2006 to June 2006. The bank had alerted Willie to the recent withdrawals, and Blakeney claims that she told him she would pay the money back. She said that she had stolen the money because she was trying to divorce Christopher but claimed that she lost the money in an Internet scam.
 

 ¶ 7. Blakeney admitted in the third interview that she and Christopher had discussed murdering Willie and Anita prior- to the incident. However, she continually maintained that she merely went along with Christopher’s discussions of murder to keep him from getting angry, and that she assumed he would just forget about the idea if she did so. She also claimed that he showed up at the house a night or two prior to the murders, and she told him to leave when it appeared that he was serious about going through with the murders. She told law enforcement that, after she heard Anita scream, Christopher made her go into the Kitchenses’ bedroom. Willie’s body was not present, but Anita’s body was. She then claimed that Christopher asked her to help carry Anita’s body to the car, but she refused. Instead, she cleaned up the linens.
 
 [5]
 
 She explained that she helped Christopher after the murders because she was afraid for her life and her children’s lives. However, her statements regarding her children were inconsistent. She stated at one point that they were both in the car with her on the way to pick up Christopher, yet she also stated that Christopher had their son with him. She later admitted in a letter to Carolyn that she had lied to police about that because she knew they would not understand why she did not immediately contact the police.
 

 ¶8. On November 30, 2006, Blakeney and Christopher were indicted on two counts of murder. A motion to sever the trials was granted on August 21, 2007.
 
 [6]
 
 In
 
 *1006
 
 a jury trial in the Circuit Court of Jones County conducted on November 19-20, 2007, Blakeney was convicted of two counts of murder. Blakeney filed a motion for a new trial on November 26, 2007, which was denied by the trial court.
 
 [7]
 
 Blakeney was sentenced on December 14, 2007, to two consecutive life sentences in the custody of the MDOC, and the sentencing orders were entered by December 20, 2007. Blakeney subsequently filed this appeal of her convictions and sentences on January 23, 2008.
 

 JURISDICTION
 

 ¶ 9. Although the State has not challenged appellate jurisdiction, we must determine whether jurisdiction exists. Mississippi Rule of Appellate Procedure 2(a)(1) states that the dismissal of an appeal is mandatory “if the notice of appeal was not timely filed pursuant to Rules 4 or 5.” Under Mississippi Rule of Appellate Procedure 4(a), Blakeney is required to file her notice of appeal within thirty days of the entry of her sentencing order. The thirty-day period ended on January 19, 2008, which was a Saturday. The following Monday, January 21, 2008, was a legal holiday. Consequently, Blakeney’s appeal should have been filed by Tuesday, January 22, 2008. As she failed to file her notice of appeal until the following day, January 28, 2008, her notice of appeal was untimely.
 
 [8]
 

 ¶ 10. However, Rules 2 and 4 may be suspended “ ‘when justice demands’ to allow an out-of-time appeal in criminal cases.”
 
 Edmond v. State,
 
 991 So.2d 588, 591 (¶ 10) (Miss.2008) (citing
 
 Fair v. State,
 
 571 So.2d 965, 966 (Miss.1990)). Mississippi Rule of Appellate Procedure 2(c) states that:
 

 In the interest of expediting decision, or for other good cause shown, the Supreme Court or the Court of Appeals may suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction; provided, however, in civil cases the time for taking an appeal as provided in Rules 4 or 5 may not be extended.
 

 As Blakeney’s notice of appeal was filed one day late, and no mention of this jurisdictional issue was made by either Blake-ney or the State, we assume that neither party recognized that this was an untimely appeal. As the dismissal of this appeal for lack of jurisdiction would likely result in Blakeney’s filing a motion for post-conviction relief citing ineffective assistance of appellate counsel based on the failure to file a timely notice of appeal, we will suspend the rules pursuant to Rule 2(c) and address this appeal on its merits.
 

 I. Whether the trial court erred in denying Blakeney’s motion for directed verdict and/or a new trial.
 

 ¶ 11. After the State’s case-in-chief, Blakeney submitted a motion for a directed verdict based upon the fact that the indictments stated that the murders were a result of suffocation. Blakeney claimed that the expert testimony showed that Willie and Anita were killed by “manual strangulation.” Therefore, she argued at trial,
 
 *1007
 
 and now on appeal, that the State failed to prove this element; consequently, the trial court erred in denying her motion for a directed verdict.
 

 ¶ 12. “A motion for a directed verdict challenges the sufficiency of the evidence.”
 
 Luckett v. State,
 
 989 So.2d 995, 997 (¶ 7) (Miss.Ct.App.2008) (quoting
 
 Doss v. State,
 
 906 So.2d 836, 838 (¶ 9) (Miss.Ct.App.2004)). We view such evidence “in the light most favorable to the State.”
 
 Lima v. State,
 
 7 So.3d 903, 909 (¶ 24) (Miss.2009) (citation omitted). We will not reverse the trial court’s denial of a motion for a directed verdict unless, “with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.”
 
 Williams v. State,
 
 973 So.2d 1012, 1015 (¶ 5) (Miss.Ct.App.2008) (citation omitted).
 

 ¶ 13. The indictment charged that Blakeney “willfully, and feloniously, with the deliberate design to effect the death” of Willie and Anita, killed and murdered them “without authority of law and not in necessary self-defense, by suffocating” the victims. Dr. Hayne testified at trial that the deaths were a result of “manual strangulation.” The State argues on appeal that the terms “strangulation”-and.“suffocation” are “synonymous.” On this point we disagree, finding that the terms are distinguishable. In a recent case,
 
 Nelson v. State,
 
 10 So.3d 898, 902 (¶12) (Miss.2009), Dr. Hayne testified that the victim was strangled, but subsequently died from suffocation, after a plastic bag was put over his head. The Mississippi Supreme Court noted that Dr. Hayne, at the trial, “explained the medical differences between strangulation and suffocation.”
 
 Id.
 
 at 904 (¶ 23);
 
 see also Merritt v. State,
 
 339 So.2d 1366, 1367 (Miss.1976) (as there was not sufficient tissue damage to indicate strangulation of the victim, it was determined that the victim’s “asphyxia was the result of suffocation”). Therefore, we find that these medical terms are not necessarily synonymous as contended by the State.
 

 ¶ 14. The State argued at trial that there was proof of suffocation when the indictment was drafted, and that the language pertaining to suffocation in the indictment was not required. We agree in both respects. At the time of the indictment, there was evidence which warranted the inclusion of “suffocation” as the cause of death. Blakeney and Christopher were indicted together, and Christopher had made statements to law enforcement that he had suffocated Willie and Anita. After the trials were severed, this evidence was not admissible against Blakeney.
 

 ¶ 15. Blakeney cites
 
 Richmond v. State,
 
 751 So.2d 1038, 1046 (¶ 19) (Miss.1999), for the proposition that the State is required to prove an unnecessary element alleged in an indictment.
 
 Richmond,
 
 however, is distinguishable from the present case. In
 
 Richmond,
 
 the indictment contained language which added an additional element of value to a charge of motor vehicle theft, which raised the crime to grand larceny. Therefore, the additional element changed the crime. Regardless, the supreme court affirmed finding harmless error as Robert Richmond was fully informed of the charged offense; therefore, no prejudice was suffered.
 
 Id.
 

 ¶ 16. The purpose of an indictment is to give a defendant “notice and a reasonable description of the charges against [him or her],” in order to assist the defendant in preparing a defense.
 
 Spicer v. State,
 
 921 So.2d 292, 319 (¶ 58) (Miss.2006) (citation omitted). “Therefore, an indictment is only required to have a clear and concise statement of the elements of the crime the defendant is charged with.”
 
 Id.
 
 
 *1008
 
 Mississippi Code Annotated section 99-7-37(1) (Rev.2007) states that:
 

 In an indictment for homicide[,] it
 
 shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused,
 
 but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, -willfully, and of his malice aforethought, kill and murder the deceased. It shall be sufficient, in an indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased, concluding in all cases as required by the Constitution of this state.
 

 (Emphasis added). In other words, there was no requirement that Blakeney’s indictment contain the manner or means of the victims’ deaths.
 
 See Jones v. State,
 
 856 So.2d 285, 289 (¶ 19) (Miss.2003) (“[Mississippi Code Annotated] [s]ection 99-7-37 does not violate a murder defendant’s constitutional notice rights by permitting the exclusion from the indictment of the manner and/or means employed in the perpetration of the offense of murder.”).
 

 ,¶ 17. Blakeney was indicted under Mississippi Annotated Code section 97-3-19(1), which put the burden on the State to prove that Blakeney killed Willie and Anita with the deliberate design to effect their deaths. The indictment sufficiently notified Blakeney of the charges against her in order that she might prepare her defense, even though the means of death listed on the indictment was not. wholly consistent with the testimony. The mere addition of this manner of death did not change the nature of the crime for which Blakeney was being charged.
 

 ¶ 18. Moreover, we find that there was evidence in the record that Willie and Anita died of suffocation. In her letter to Carolyn, Blakeney wrote, “I didn’t know that he (Christopher) had suffocated them until my last talk with Matt. But I figured he must have for me not to hear them.”
 

 ¶ 19. Accordingly, we find that the evidence was sufficient to find Blakeney guilty of the crime for which she had been charged and that the circuit court properly denied Blakeney’s motion for a directed verdict.
 

 II. Whether the verdicts are contrary to the overwhelming weight of the evidence.
 

 ¶ 20. Blakeney claims that the denial of her motion for a new trial was error as the evidence presented was “circumstantial at best.” Specifically, she argues that there was neither any direct evidence presented. that she had assisted in the murders of Willie and Anita nor was there evidence that she had entered into an agreement with Christopher to murder Willie and Anita. “A motion for new trial challenges the weight of the evidence.”
 
 Lima,
 
 7 So.3d at 908 (¶ 21) (citation omitted). We will only overturn a jury verdict “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 
 “In reviewing the decision of the trial court, we accept as true all of the evidence favoring the State.”
 
 Turner v. State,
 
 910 So.2d 598, 602 (¶ 16) (Miss.Ct.App.2005).
 

 ¶ 21. Blakeney is correct that no direct evidence was brought at trial to show that she was present in the room when the murders occurred. However, we disagree with Blakeney that the evidence against her was purely circumstantial. A circumstantial evidence case is “one in which there is neither an eyewitness nor a confession to the crime.”
 
 Simpson v. State,
 
 993 So.2d 400, 409 (¶31) (Miss.Ct.App.2008) (quoting
 
 Stephens v. State,
 
 911 So.2d 424, 437 (¶43) (Miss.2005)). Blake-
 
 *1009
 
 ney confessed to the police that she and Christopher had discussed the murders prior to their occurrence. She also admitted that she had assisted Christopher in attempting to cover up the murders. In the letter written to Carolyn, Blakeney stated:
 

 Chris kept telling me that he knew ways (several) how he could kill them and it wouldn’t hurt them and it would be quick. He made it seem perfect that way. They’d die peacefully and with no pain and not ever have to worry again and I wouldn’t have to worry about screwing up their lives. So it was settled [and] he went to find the stuff.
 

 A confession by a defendant constitutes direct evidence.
 
 Swinney v. State,
 
 829 So.2d 1225, 1286-87 (¶53) (Miss.Ct.App.2002). If “the accused has made an admission on an element of the offense, it is no longer a circumstantial evidence case.”
 
 Colburn v. State,
 
 990 So.2d 206, 221 (¶ 50) (Miss.Ct.App.2008) (citation omitted).
 

 ¶22. The granting of “a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.”
 
 Goff v. State,
 
 14 So.3d 625, 649 (¶88) (Miss.2009). Direct evidence at trial established that Blakeney and Christopher had a “deliberate design to effect the deathfs]” of Willie and Anita. They discussed the murders beforehand and “settled” the matter. Further, Blake-ney’s statements that Christopher had her touch the taser may have indicated that she was formulating a reason for her fingerprints to be on the weapon if it was ever located. The jury could have reasonably concluded that Blakeney’s explanation was suspicious, and that Blakeney had used the taser to stun Willie and Anita. Additionally, there was direct evidence that Blakeney had participated in disposing of her parents’ bodies.
 

 ¶ 23. Viewing the evidence in the light most favorable to the verdict, we find that the verdict was not contrary to the overwhelming weight of the evidence as to sanction an unconscionable injustice. Accordingly, we affirm the trial court’s denial of Blakeney’s motion for a new trial. This issue is without merit.
 

 III. Whether the trial court erred in failing to redact potentially prejudicial statements from the third videotaped interview which was admitted into evidence.
 

 ¶24. During the third interview, law enforcement told Blakeney that Christopher had confessed and that he had implicated her in the planning and carrying out of the murders. Specifically, Officer Ishee told Blakeney that Christopher said that she had talked him into the murders. Later in the interview, Officer Ishee reiterated that Christopher was implicating her as the planner, and that Christopher claimed Blakeney was in the room when the murders occurred. Blakeney vehemently denied both of these claims. Blakeney filed a motion in limine on November 6, 2007, to suppress these portions of the videotaped statement. The trial judge considered the evidence at a hearing on November 9, 2007, and determined that the motion should be denied.
 
 [9]
 
 Blakeney argues that the statements made by law enforcement regarding Christopher’s statements are hearsay under Rule 801(c) of the Mississippi Rules of Evidence and that any probative value of such statements was outweighed by their prejudicial nature. Therefore, she claims that it was
 
 *1010
 
 error to submit this evidence to the jury. The State argues that Blakeney failed to make a contemporaneous objection to the admission of this evidence at trial and is now procedurally barred from raising this matter on appeal. However, the supreme court has held that a “defendant’s motion in liminé regarding the introduction of evidence properly preserve[s] the issue for appeal, and an objection [is] not necessary.”
 
 Goff,
 
 14 So.3d at 640 (¶ 46) (citing
 
 Kettle v. State,
 
 641 So.2d 746, 748 (Miss.1994)). Therefore, we will address this issue on its merits.
 

 ¶ 25. A challenge to the admissibility of evidence at trial is reviewed under an abuse of discretion standard.
 
 Stevenson v. State,
 
 18 So.Sd 314, 317 (¶ 15) (Miss.Ct.App.2008). We afford the trial judge a large measure of discretion in determining the relevancy and admissibility of evidence, and unless an abuse of this discretion results in prejudice to the defendant, this Court will not reverse the ruling.
 
 Brown v. State,
 
 969 So.2d 855, 860 (¶ 13) (Miss.2007). Mississippi Rule of Evidence 402 states that: “All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Mississippi, or by these rules. Evidence which is not relevant is not admissible.”. “Evidence is relevant if it has any tendency to prove a consequential fact.”
 
 Juarez v. State,
 
 965 So.2d 1061, 1065 (¶ 9) (Miss.2007).
 

 ¶ 26. This Court has stated:
 

 Mississippi Rule of Evidence 801(c) defines hearsay as, “a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The threshold question when addressing a hearsay issue is whether the statement is actually hearsay.
 
 Gayten v. State,
 
 595 So.2d 409, 414 (Miss.1992).
 

 Young v. State,
 
 987 So.2d 1074, 1076-77 (¶ 11) (Miss.Ct.App.2008). “Hearsay is not admissible except as provided by law.” M.R.E. 802. However, if the statement is not admitted for the truth of the matter but, rather, to impeach a witness’s testimony, then it is admissible hearsay.
 
 Long v. State,
 
 934 So.2d 313, 316 (¶ 10) (Miss.Ct.App.2006) (citation omitted). We find that the trial court properly admitted the videotaped statements into evidence as they were not being admitted “to prove the truth of the matter asserted,” that Blakeney planned and committed the murder of her parents. Rather, the statements were admitted to demonstrate that Blakeney’s statements were inconsistent as to the events of that morning. They were also an attempt to illicit more information from Blakeney about the events of that morning.
 

 ¶27. Additionally, Blakeney argues that it was error not to give a limiting instruction to the jury prior to the jury’s viewing of the videotape. Although defense counsel objected to the admission of the statements at trial, counsel did not request a limiting instruction. The trial court is not required to issue a sua sponte Rule 404(b) limiting instruction; rather, this burden lies solely with trial counsel.
 
 Dao v. State,
 
 984 So.2d 352, 362 (¶35) (Miss.Ct.App.2007). Consequently, this argument is procedurally barred. Notwithstanding the procedural bar, the trial judge granted a jury instruction which directed the jury to consider only the statements given by Blakeney in this interview. Therefore, we find no error as the court submitted a limiting instruction.
 

 ¶ 28. Further, even if the trial court did err in admitting the statements into evidence, any error was harmless. Unless an error in the admission or exclusion of evidence affects a substantial right
 
 *1011
 
 of a party, it is not considered reversible error.
 
 Moore v. State,
 
 1 So.3d 871, 876 (¶ 18) (Miss.Ct.App.2008) (citing
 
 Williams v. State,
 
 960 So.2d 506, 510 (¶ 11) (Miss.Ct.App.2006)). An error is considered harmless if the improper evidence “was unimportant in relation to everything else the jury considered on the issue in question.”
 
 Williams v. State,
 
 991 So.2d 593, 608 (¶ 55) (Miss.2008) (quoting
 
 Tanner v. State,
 
 764 So.2d 385, 399-400 (¶37) (Miss.2000)). Here, the statements by law enforcement regarding Christopher were “unimportant” as there was direct evidence of Blakeney’s participation in the murders. Blakeney admitted that the planning of the murders was “settled,” that she knew Chris was going to obtain the “stuff” to carry out the murders, and that she assisted Christopher in covering up the murders after the fact. Regardless of who originated the murder scheme, Blakeney’s admissions were sufficient to convict her of the murders. Officer Ishee’s recitation of Christopher’s comments against Blakeney were less damning than Blakeney’s own admission of her participation in the scheme.
 

 ¶ 29. Accordingly, we find no abuse of discretion in the admission of this evidence at trial. This issue is without merit.
 

 IV. Whether the trial court improperly admitted a videotaped interview where Blakeney had not been read her
 
 Miranda
 
 rights.
 

 ¶ 30. Blakeney claims that her first videotaped interview, which was conducted on the day of the murders, should not have been admitted into evidence as she had not been informed of her rights, as required under
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to or during the interview. Defense counsel filed a motion in limine on November 15, 2007, to suppress the statements by Blakeney from this interview. The trial judge, after hearing arguments prior to the start of trial, denied the motion stating that the videotaped statements from this interview went to Blakeney’s credibility as it showed that she changed the facts she gave to the police during the course of the subsequent interviews. Defense counsel entered a continuing objection to the testimony surrounding this interview.
 

 ¶ 31. Officer Ishee testified that, at the time of the first interview, Blakeney was not considered a suspect; rather, she was questioned in order to determine the events of that morning and to ascertain Christopher’s whereabouts. “The threshold question in a
 
 Miranda
 
 rights analysis is whether the defendant was in custody and being interrogated when the statement, in question was made.”
 
 Drake v. State,
 
 800 So.2d 508, 513 (¶ 12) (Miss.2001). To determine whether a person is considered to be “in custody[,]” we consider whether “a reasonable person would feel that they were going to jail and not just being temporarily detained.”
 
 Keys v. State,
 
 963 So.2d 1193, 1197 (¶ 9) (Miss.Ct.App.2007) (citation omitted). “A subject is in custody when his right to leave freely has been restricted.”
 
 Bell v. State,
 
 963 So.2d 1124, 1134 (¶ 25) (Miss.2007) (citing
 
 Roberts v. State,
 
 301 So.2d 859, 861 (Miss.1974)). The Mississippi Supreme Court has stated that:
 

 Whether a reasonablé person would feel that she was “in custody” depends on the totality of the circumstances, and may include factors such as: (a) the place of interrogation; (b) the time of interrogation; (c) the people present; (d) the amount of force or physical restraint used by the officers; (e) the length and form of the questions; (f) whether the defendant comes to the authorities voluntarily; and (g) what the defendant is told about the situation.
 

 Mingo v. State,
 
 944 So.2d 18, 26 (¶ 12) (Miss.2006) (citing
 
 Hunt v. State,
 
 687 So.2d 1154, 1160 (Miss.1996)).
 

 
 *1012
 
 ¶ 32. In the first interview, Blakeney was admittedly at the sheriffs office in an interrogation room. However, Blakeney was not in handcuffs during the interview. She voluntarily provided facts to law enforcement regarding her accusations that Christopher had taken her parents and assisted the police in determining Christopher’s whereabouts. Further, it was not mentioned at any point in that interview that the deceased bodies of Willie and Anita had been found. Consequently, it would have been premature to take Blake-ney into custody as there was no confirmation that the murders had occurred.
 

 ¶ 33. Blakeney was initially brought to the sheriffs office as a witness. It was only after the first interview concluded, and more information was obtained in a subsequent interview, that she became a suspect in the murders and was taken into custody. Therefore, based upon the totality of the circumstances surrounding the interview, we find that the statements made by Blakeney were admissible as evidence.
 

 V. Whether the cumulative effect of the combined errors at trial warrants reversal.
 

 ¶ 34. Blakeney claims that, although the individual errors cited above may not merit reversal, the cumulative effect of the combined errors deprived her of a fair trial. However, as we have found no individual errors, there can be no cumulative effect. Therefore, we find that this issue is without merit.
 

 ¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF TWO COUNTS OF MURDER AND SENTENCES OF TWO CONSECUTIVE LIFE TERMS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, ROBERTS AND MAXWELL, JJ., CONCUR. ISHEE AND CARLTON, JJ., NOT PARTICIPATING.
 

 [1]
 

 . There is some discrepancy in the evidence and testimony as to whether Blakeney actually told Carolyn at that point that Christopher had killed Willie and Anita.
 

 [2]
 

 . The taser gun was never recovered. The police later found the receipt for the gun among Christopher’s belongings.
 

 [3]
 

 . The video of this interview is not part of the record.
 

 [4]
 

 . At this point, both Blakeney and Christopher had been taken into custody.
 

 [5]
 

 . Testimony also showed that she was told to clean up the "confetti," but she did not do so.
 

 [6]
 

 . Christopher was subsequently convicted of the murder of Willie Kitchens, but not of Anita, and he was sentenced to life in the custody of the MDOC. His conviction was upheld on appeal.
 
 See Blakeney v. State, 29
 
 So.3d 46 (Miss.Ct.App.2009). His petition for rehearing was denied on December 1, 2009.
 

 [7]
 

 . On November 27, 2007, a hearing was held on the motion. Defense counsel requested a delay on the consideration of the motion as the trial judge had not entered the sentencing orders. However, as the motion pertained to arguments made at trial, the trial judge considered the defense's motion.
 

 [8]
 

 . This Court acknowledges that Blakeney's current counsel, Daniel D. Ware, was not her counsel of record at the time of the filing of the Notice of Appeal.
 

 [9]
 

 . In actuality, the trial judge stated that the probative value was outweighed by the prejudicial effect. However, as he denied the motion, we can only assume that this was a simple misstatement by the judge.