CARLTON, J.,
for the Court:
¶ 1. Anthony Fullilove was convicted in the Coahoma County Circuit Court of conspiracy and sentenced as a habitual offender to five years in the custody of the Mississippi Department of Corrections. Fullilove appeals and argues: (1) the circuit court erred in denying his motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial; (2) the circuit court erred by allowing hearsay statements into evidence; (3) the circuit court erred in denying his motion for a mistrial due to the prosecutor making improper comments on his right not to testify; and (4) the circuit court erred in finding that his sentence satisfied the requirements of the habitual-offender statute. We find no error and affirm the circuit court’s judgment.
FACTS
¶ 2. On February 9, 2010, Officer Rickey Bridges of the Clarksdale Police Department arrested Fullilove in Clarksdale, Mississippi. Officer Bridges responded to a call reporting a theft at Walmart, and he pulled over a car with a tag number matching that given him by Zachary Pey-ton, Walmart’s local asset-protection manager. Peyton informed Officer Bridges that he had observed three men leaving Walmart earlier that day, and he had recognized the men after reviewing video-surveillance footage of the theft at Wal-mart two days earlier. Officer Bridges pulled over the car matching Peyton’s description, and he arrested Fullilove for an outstanding warrant on an unrelated misdemeanor.
¶ 3. During a pretrial recorded interview at the police station with Investigator Kendrick Walker, Fullilove stated that Earl Baine and Gregory Harris had picked him up to go to Walmart, so he could purchase food for his family. Fullilove stated Harris had previously obtained a key to the iPod case from the electronics department at Walmart. Fullilove admitted in the re *672 corded interview that while he was in the store, he had removed two iPods out of the iPod case and had given them to Harris. He also admitted Harris had handed him one of the iPods once they had exited Walmart and returned to the car. Fulli-love claimed that he immediately had given the iPod to Baines, stating that he did not want it. Fullilove did, however, admit to asking Baines to sell the iPod for him.
¶ 4. A Coahoma County grand jury indicted Fullilove on the charges of conspiracy and grand larceny, and the indictment reflected his status as a habitual offender due to two previous non-violent felony offenses. Fullilove pled not guilty to all charges, and a trial was held on July 30, 2010. During the State’s rebuttal argument to the jury, the State commented that although Fullilove did not testify, he “spoke more in this case than any other.” Fullilove’s counsel objected and moved for a mistrial, claiming that any comment on Fullilove’s decision not to testify violated Fullilove’s Fifth Amendment rights. The circuit judge reserved ruling on the motion until after the verdict. The prosecutor then continued his rebuttal argument and explained that Fullilove spoke through his body language on the surveillance video, and also through his prerecorded statements, which were both admitted into evidence at trial.
¶ 5. The jury found Fullilove guilty of conspiracy but not guilty of grand larceny. Following the verdict, the State submitted a response to Fullilove’s motion for a mistrial. Fullilove moved for a JNOV. On August 16, 2010, the circuit judge denied Fullilove’s motion for a mistrial and his motion for a JNOV. On August 25, 2010, Fullilove was sentenced as a habitual offender to five years in the custody of the MDOC.
DISCUSSION
I. Denial of Post-Trial Motions
¶ 6. Fullilove argues that the circuit court erred in denying his motion for a JNOV. Alternatively, Fullilove argues that the circuit court erred in failing to grant his motion for a new trial, and that the jury’s verdict was contrary to the overwhelming weight of the evidence. Fulli-love asserts that the State’s case contained many unsubstantiated factual claims, as well as circumstantial evidence and hearsay statements.
a. Legal Sufficiency of the Evidence
¶ 7. In Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005), the Mississippi Supreme Court set forth the standard for considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for a JNOV:
[T]he critical inquiry is whether the evidence shows “beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.” However, this inquiry does not require a court to
‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence “point in favor of the defen *673 dant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty,” the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)); see also Dyeus v. State, 875 So.2d 140, 164 (Miss.2004). However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense[,]” the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70; see also Gibby v. State, 744 So.2d 244, 245 (Miss.1999).
¶ 8. Mississippi Code Annotated section 97-1-1 (Supp.2011) sets out the elements of proof to establish the crime of conspiracy:
1) If two (2) or more persons conspire either:
(a) To commit a crime; or
[[Image here]]
(h) To accomplish any unlawful purpose, or a lawful purpose by any unlawful means; such persons, and each of them, shall be guilty of a felony and upon conviction may be punished by a fine of not more than Five Thousand Dollars ($5,000.00) or by imprisonment for not more than five (5) years, or by both.
Fullilove argues that the State only presented circumstantial evidence to show that a conspiracy existed between Fulli-love, Harris, and Baines.
¶ 9. The record reflects that during Investigator Walker’s pretrial recorded interview with Fullilove, which was admitted into evidence at trial, Fullilove admitted to acting as a lookout for Harris as he unlocked the iPod case. Fullilove also admitted that he removed two iPods from the case and placed them in the shopping cart. The Walmart video-surveillance evidence, also admitted into evidence, shows Fulli-love removing two items out of the case and placing them in an empty cart. Fulli-love argues that although he removed the iPods from the case and placed them into the cart, he never intended to steal the iPods. He also submits that he never actually removed any of the iPods from their individual cases nor left the store with any iPods in his possession. The pretrial recorded interview reflects Fulli-love informed Investigator Walker that Baines and Harris put the iPods in their pockets and then walked out of the store.
¶ 10. During questioning, Fullilove admitted to Investigator Walker in the pretrial recorded interview that once he returned to the car, Harris offered him one iPod. Fullilove claimed that he immediately gave the iPod to Baines, stating that he did not want it. The pretrial recorded interview reflects Fullilove did, however, admit to asking Baines to sell the iPod for him. In Blakeney v. State, 39 So.3d 1001, 1009 (¶ 21) (Miss.Ct.App.2010), this Court acknowledged that a confession by a defendant constitutes direct evidence. Therefore, if “the accused has made an admission on an element of the offense, it is no longer a circumstantial evidence case.” Id.
¶ 11. Fullilove’s statements to Investigator Walker show that he acted as a lookout for Harris and Baines. Fullilove also admitted to removing two iPods from the case at Walmart, which Baines and Harris later carried out of the store. The record reflects Fullilove was aware that Harris and Baines failed to pay for these *674 iPods. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Fullilove of conspiracy.
b. Weight of the Evidence
¶ 12. In Bush, 895 So.2d at 844 (¶ 18), the supreme court also laid out the standard for reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence:
[The appellate court] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Herring v. State, 691 So.2d 948, 957 (Miss.1997).
[[Image here]]
However, the evidence should be weighed in the light most favorable to the verdict. Herring, 691 So.2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, “unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict.” McQueen v. State, 423 So.2d 800, 803 (Miss.1982).
¶ 13. In support of his argument that the circuit court erred in denying his motion for a new trial, Fullilove submits that the State presented only limited evidence at trial, and that none of the evidence pertained to the conspiracy charge. He further claims the jury’s verdict was contradictory, and he presents himself as “an unwilling patsy.”
¶ 14. The record reflects that the State presented evidence of Fullilove’s interview with Investigator Walker in which Fulli-love admitted removing the iPods from the case at Walmart. The State also presented video-surveillance footage of the theft, which matched Fullilove’s description of the event. After our review of the record, we cannot view the evidence in the light most favorable to the verdict and say that an unconscionable injustice resulted from this jury’s rendering of a guilty verdict. We therefore find no error in the circuit court’s denial of Fullilove’s motion for a new trial. This issue lacks merit.
II. Hearsay
¶ 15. Fullilove next argues that the circuit court committed plain error by allowing Investigator Walker to testify that during the investigation, Officer Hinton allegedly identified the three men[1] on the surveillance tape, and this identification by Officer Hinton led to Fullilove’s arrest. Fullilove submits that this statement is hearsay, which the State offered to prove the truth of the matter asserted — that Fullilove was one of the three men on the surveillance video.
¶ 16. The standard of review for the admission or suppression of evidence is abuse of discretion. Miss. Transp. Comm’n v. McLemore, 863 So.2d 31, 34 (¶ 4) (Miss.2003). The decision of the circuit court must stand “unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.” Id. Furthermore, when an error is made by the circuit court regarding the admission or suppression of evidence, this Court “will not reverse unless the error adversely affects a substantial right of a party.” Haggerty v. Foster, 838 So.2d 948, 958 (¶ 25) (Miss.2002).
¶ 17. The record reflects that Fullilove failed to timely object, and thus waives his argument on appeal that the challenged testimony is hearsay. Oates v. State, 421 So.2d 1025, 1030 (Miss.1992). *675 Because this issue is procedurally barred for Fullilove’s failure to contemporaneously object, he must rely on the doctrine of plain error. Foster v. State, 639 So.2d 1263, 1289 (Miss.1994) (“[A] defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal.”). The plain-error doctrine requires a party to prove that an error occurred which “resulted in a manifest miscarriage of justice.” Williams v. State, 794 So.2d 181, 187 (¶ 23) (Miss.2001).
¶ 18. Fullilove further argues that the hearsay statement violated his Sixth Amendment right to confront and cross-examine the witnesses brought against him. Established case law holds that “only testimonial hearsay is capable of violating the Sixth Amendment.” Neal v. State, 15 So.3d 388, 403 (¶ 34) (citing Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)). To examine whether the challenged testimony constitutes hearsay, we must determine the purpose for admitting the testimony into evidence and review its relevance. See M.R.E. 401, 402.
¶ 19. Mississippi Rule of Evidence 801(c) states: “ ‘Hearsay1 is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The State claims, however, that Officer Hinton was merely mentioned as a source of information to show how Investigator Walker came to interview Fullilove—Investigator Walker identified Fullilove as one of the individuals on the surveillance video. Investigator Walker explained that based on the information provided by Officer Hinton, who “came and identified all three of those subjects” in the surveillance video, Investigator Walker then interviewed Fullilove about the theft at Walmart.
¶ 20. Statements do not constitute hearsay when admitted to explain an officer’s course of investigation or motivation for the next investigatory step by that officer. Smith v. State, 984 So.2d 295, 300 (¶ 8) (Miss.Ct.App.2007). “[0]ut-of-court statements made to the police during the course of their investigations [are admissible].” Id, (citing Gray v. State, 931 So.2d 627, 631 (¶ 14) (Miss.Ct.App.2006)). In this case, the State asserts and the record supports that the circuit court admitted Officer Hinton’s alleged identification of Fullilove to show Investigator Walker’s reasons for proceeding to interrogate Ful-lilove about the theft, and not for the purpose of proving the truth of the assertion by Officer Hinton. See Swindle v. State, 502 So.2d 652, 657-58 (Miss.1987). We find no abuse of discretion in the circuit court’s admission of this testimony for this purpose; Fullilove fails to meet his burden to show how the admission of the testimony violated a fundamental substantial right. See Williams, 794 So.2d at 187 (¶ 23).
¶21. Since Fullilove failed to make a contemporaneous Sixth-Amendment objection to the admission of Investigator Walker’s testimony, his arguments on this issue are procedurally barred. See Briggs v. State, 16 So.3d 696, 698-99 (¶ 11) (Miss.Ct.App.2008). Under the plain-error doctrine, “we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant’s ‘fundamental, substantive right.’ ” Neal, 15 So.3d at 403 (¶ 32) (citing Smith, 986 So.2d at 294 (¶ 10)). However, the record shows relevant and probative purposes under the Mississippi Rules of Evidence for the admission of Investigator Walker’s testimony regarding Officer Hinton’s alleged identification of Fullilove, which relate to Investigator Walker’s state of mind and the course of his investigation. *676 We find Fullilove fails to show that the disputed testimony tainted the jury by exposing them to inadmissible hearsay, and he fails to show a violation of a fundamental substantial right. We therefore find this assignment of error lacks merit.
III. Comment by the Prosecutor
¶ 22. Fullilove next argues that the State violated his right to remain silent under the Fifth Amendment to the United States Constitution by the prosecutor’s comment during closing argument regarding Fullilove’s failure to testify. As a result of this remark, Fullilove argues that the circuit judge erred in failing to grant his motion for a mistrial based on that remark. Fullilove asserts that as a result of the circuit judge’s denial of his motion for a mistrial, the prosecutor’s comment violated the fairness and integrity of his trial.
¶ 23. “The standard of review for denial of a motion for mistrial is abuse of discretion.” Pulphus v. State, 782 So.2d 1220, 1228 (¶ 10) (Miss.2001). “[T]his Court gives deference to a trial court’s determination of whether a mistrial is warranted based upon any error in the proceedings that resulted in any ‘substantial and irreparable prejudice to the defendant’s case.’ ” Banks v. State, 45 So.3d 676, 683 (¶ 34) (Miss.Ct.App.2010) (quoting Sipp v. State, 936 So.2d 326, 331 (¶ 7) (Miss.2006)). To address this issue, we must examine precedent, the verdict in this case, and the context of the prosecutor’s disputed comment.
¶ 24. In Griffin v. California, 380 U.S. 609, 613-14, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court explained that the Fifth Amendment forbids comments by the prosecution on the accused’s silence or instructions by the court that such silence is evidence of guilt. Later, in United States v. Robinson, 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Supreme Court found:
[I]t is evident that the prosecutorial comment did not treat the defendant’s silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his side of the case. Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant’s silence, Griffin holds that the privilege against compulsory self-incrimination is violated. But where as in this case the prosecutor’s reference to the defendant’s opportunity to testify is a fair response to a claim made by defendant or his counsel, we think there is no violation of the privilege.
¶ 25. The context of the disputed comments here shows that the circuit court admitted Fullilove’s pretrial recorded audio statement into evidence during trial. Robinson, 485 U.S. at 33, 108 S.Ct. 864. Having examined both the State’s and the defense’s closing arguments, we point out that the record shows that both the prosecution and the defense referred to Fulli-love’s pretrial recorded statement during their respective closing arguments. Specifically, the prosecutor referred to Fulli-love’s recorded statement and to what Ful-lilove conveyed in that recorded statement regarding his admission to taking an iPod out of the case at Walmart using keys that were not his. Fullilove did not admit to leaving Walmart with the stolen items. During the trial, we note that the circuit judge also admitted surveillance videos offered by the State showing Fullilove and the other alleged conspirators at the iPod counter at Walmart, the location of the stolen merchandise. We point out that during closing arguments the law allows a lawyer to refer to the evidence admitted at *677 trial. Gaston v. State, 823 So.2d 473, 495-96 (¶ 72) (Miss.2002) (During closing argument, a lawyer is entitled to argue his or her case drawing all rational inferences that arise from the evidence presented in the courtroom.).
¶ 26. Turning to the transcript of the closing argument, the prosecutor stated the following, in rebuttal to the defense’s closing argument:
Now I hope you don’t hold it against the State that I only called two people as a witness [sic] in this case. I didn’t feel like it was a very complicated case. I called the two most important people. But I think that Anthony Fullilove, though he did not testify, spoke more in this case than any other....
¶ 27. Fullilove’s counsel objected and moved for a mistrial, claiming that any comment on Fullilove’s decision not to testify violated Fullilove’s Fifth-Amendment rights. The circuit judge reserved ruling on the motion until after the verdict. The prosecutor then proceeded with his rebuttal argument and explained that Fullilove spoke through his own body language on the Walmart surveillance videos, as well as his pretrial recorded statement given to Investigator Walker in which Fullilove admitted to taking an iPod out of the store display case at Walmart. The prosecutor stated: “Anthony Fullilove, through his body language on those videos, as well as his statement given to [Investigator] Walker, tells you everything and shows you everything in this case.”[2] The judge ultimately denied Fullilove’s motion for a mistrial and his subsequent post-trial motion for a JNOV.
¶ 28. The State submits on appeal that the circuit judge committed no error in denying Fullilove’s motion for a mistrial. It argues that during the rebuttal argument, the prosecutor made the challenged statement in response to the closing argument of the defense, in which the defense counsel claimed lack of evidence to convict Fullilove and stated that Fullilove did not have to prove anything regarding his innocence. We recognize that a “prosecutorial comment must be examined in context!.]” Robinson, 485 U.S. at 33, 108 S.Ct. 864. Additionally, when a prosecutor’s statement is not “an outright violation,” this Court will review the facts on a case-by-case basis.” Wright, 958 So.2d 158, 166 (¶ 24) (Miss.2007) (citation omitted). Furthermore, “not every comment regarding the lack of any defense is automatically deemed to point toward the defense’s failure to testify.” Id. (citing Jimpson v. State, 532 So.2d 985, 991 (Miss.1998)).
¶ 29. We acknowledge that our supreme court has provided guidance regarding the difference between commenting on a defendant’s failure to testify and responding to an asserted defense. See Dora v. State, 986 So.2d 917, 923 (¶ 11) (Miss.2008). In Dora, the supreme court explained:
There is a difference between a comment on the defendant’s failure to testify and a comment on the defendant’s failure to put on a successful defense. The [S]tate is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to the defendant’s failure to testify by innuendo and insinuation. The question is whether the prosecutor’s statement can be construed as commenting upon the failure of the defendant to take the stand.
Id. (internal quotations omitted).
¶ 30. The record shows that the circuit judge stated the following in his order denying Fullilove’s motion for a mistrial:
*678 Looking at the comment offered in the instant case, it appears to this court that the intent of the prosecutor was not to draw the attention of the jury to the fact that the defendant did not testify, but rather to emphasize the defendant’s actions as depicted on the video recording and the defendant’s words as recorded on the audio recording. The fact that the jury found the defendant ‘not guilty* on one of the counts suggests that the jury acted rightfully independent of the prosecutor and was not improperly persuaded by his comment.
¶ 31. We find no abuse of discretion in the circuit court’s determination that the prosecutor’s comment did not treat Fulli-love’s silence as “substantive evidence of guilt” but, rather, emphasized the information conveyed by Fullilove’s actions and statements, as reflected in Fullilove’s own pretrial recorded statement and the Wal-mart surveillance video, which were both admitted into evidence at trial. The prosecutor’s comment showed the lack of successful defense, as allowed by Dora.
¶ 32. We further note that the record reflects that the circuit judge instructed the jury, through jury instruction C-6, that “a defendant is not required to testify in a case and the fact that the defendant did not testify shall not give rise to an inference of guilt in your minds nor are you to speculate as to what his testimony might have been.” Our supreme court has held on numerous occasions that it is presumed that jurors follow the instructions of the court; “[t]o presume otherwise would be to render the jury system inoperable.” Johnson v. State, 475 So.2d 1136, 1142 (Miss.1985); see also Grayson v. State, 879 So.2d 1008, 1020 (¶ 32) (Miss.2004); Crenshaw v. State, 520 So.2d 131, 134 (Miss.1988). Accordingly, we find no abuse of discretion in the circuit court’s denial of Fullilove’s motion for a mistrial. See Pulphus, 782 So.2d at 1223 (¶ 10).
IV. Habitual-Offender Status
¶ 33. Fullilove’s final claim of error is that the circuit judge erred in holding that Fullilove’s sentence satisfied that requirements of Mississippi’s habitual-offender statute, Mississippi Code Annotated section 99-19-81 (Rev. 2007). Fullilove asserts that he does not qualify as a habitual offender, and that the State failed to offer any evidence to prove that he did qualify.
¶ 34. Section 99-19-81 provides:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
¶ 35. Fullilove concedes his conviction in December 2005 for possession of cocaine and sentence of six years, with one year to serve and five years suspended. However, Fullilove argues the legal insufficiency of the second of the two convictions[3] used to enhance his current sentence. Specifically, Fullilove claims that he received only a three-month sentence, plus five years post-release supervision, for this second conviction. The State counters Fullilove’s calcu *679 lation by stating that the sentence for that conviction (for the possession of stolen property) amounted actually to five years and three months — three months to serve, and five years post-release supervision. We have stated:
The Mississippi Supreme Court and this Court have repeatedly held that an individual is not required to have actually served any prison time in order to be sentenced as a habitual offender. In Jackson v. State, 381 So.2d 1040, 1042 (Miss.1980), the supreme court, in response to the argument that section 99-19-81 requires not only that an individual be sentenced to terms of one year or more, but also that such sentences be “served through actual incarceration,” stated:
We reject this argument, because we think the statutory intention is satisfied where, as here, the accused has been twice previously adjudged guilty of distinct felonies upon which sentences of one year or more have been pronounced, irrespective of subsequent probation or suspension of the sentences.
We are of the opinion the statute is intended to cure the evil of recidivism. Enhanced punishment relates to the conduct underlying the previous convictions. Adjudication of guilt and consequent pronouncements of sentences merely accord those convictions finality. Subsequent suspension of the sentences or probation is a matter of grace only, arising from the hope that the prospects of rehabilitation of the guilty warrant leniency. Clearly that hope is defeated when the beneficiary of the indulgence perpetrates further felonies. The statute is suited precisely to this problem.
Davis v. State, 5 So.3d 435, 441 (¶ 14) (Miss.Ct.App.2008).
¶ 36. We must further point out that in reviewing the transcript from the sentencing hearing, the record reflects no objection by Fullilove as to the admission into evidence of the sentencing judgments from his prior convictions or as to the circuit court’s determination of his status as an habitual offender under section 99-19-81. When an accused fails to object to his adjudication as a habitual offender during the sentencing phase, he is procedurally barred from raising the issue for the first time on appeal. Cummings v. State, 465 So.2d 993, 995 (Miss.1985). Procedural bar notwithstanding, the transcript reflects the circuit judge held that the two previous sentencing judgments, a conviction for the possession of cocaine and another for the possession of stolen property, satisfied the requirement under section 99-19-81 that Fullilove have two prior felony convictions.
¶ 37. Applying our supreme court’s reasoning in Jackson to the case before us, we find no error in the circuit judge’s determination regarding Fullilove’s habitual-offender status, see Jackson, 381 So.2d at 1042, and we find that Fullilove’s two prior felony convictions indeed satisfy the requirements of section 99-19-81. This issue is without merit.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF CONSPIRACY AND SENTENCE AS A HABITUAL OFFENDER OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
IRVING AND GRIFFIS, P.JJ., ROBERTS, MAXWELL AND FAIR, JJ„ CONCUR. ISHEE, J„ CONCURS IN PART AND DISSENTS IN PART WITH *680 SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., BARNES AND RUSSELL, JJ.

. Officer Hinton identified the three men accused of being part of the conspiracy and charged wi& stealing the iPods from the case at Walmart.

. Testimony during trial referenced Fulli-love’s pretrial recorded statements admitted into evidence and the Walmart surveillance video.

. The record includes sentencing judgments for Fullilove, which reflect his first prior conviction for possession of cocaine and his second prior conviction for possession of stolen property.