IRVING, P.J.,
for the court:
¶ 1. On January 11, 2012, a Grenada County jury convicted Marvelle Pryor of possession of a firearm by a convicted felon. The circuit court sentenced Pryor, as a violent habitual offender, to life imprisonment in the custody of the Mississippi Department of Corrections, without eligibility for parole. Pryor filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the court denied. Feeling aggrieved, Pryor appeals and argues: (1) the circuit court erred in denying his motion for a JNOV or, in the alternative, a new trial; (2) the circuit court erred in sustaining the State’s objection to testimony regarding fingerprints on the subject weapon; (3) his sentence is grossly disproportionate; and (4) the cumulative errors in the case require reversal of his conviction.
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. On September 28, 2011, shortly after 10:00 p.m., Lieutenant Carnell Farmer, with the Grenada Police Department, heard gunshots while standing outside of the police station. Lieutenant Farmer called Officers Steven Rosamond, Scott Caulder, and Jeff Wilson to see if they would help him locate the area from which the shots were fired. The officers agreed to assist, and they left the police station in an attempt to find out where the shots came from. 'While Lieutenant Farmer was traveling on Main Street, he received a call from dispatch saying that the shots were fired “in the area of Jefferson Street and Line Street.” Lieutenant Farmer drove to Line Street and began to search near First Baptist Church. "While traveling south on Line Street, Lieutenant Farmer received a call from Officer Caulder that Officer Caulder “was going to be out with a subject.” As Lieutenant Farmer drove toward Officer Caulder’s location, he saw “a young man run across the yard of the church, across the street, across Line Street into the yard.” The young man was later captured by other officers and identified as Pryor.
¶ 4. Officer Caulder testified that he assisted Lieutenant Farmer and other officers in trying to find the source of the shots that night. He stated that as he drove along Main Street near First Baptist Church, he made contact with “a ... male in a striped shirt.” He stopped his patrol car and “asked the gentleman to come over.” He asked the man if he had heard the shots and where he was coming from. The man responded that “he was coming from the east side and he had not heard any shots.” Officer Caulder asked the man his name, and the man identified himself as Pryor. Officer Caulder asked Pryor to walk to the back of the patrol car with him. According to Officer Caulder, “as he was walking to the back of my patrol unit[,] he took off running east across the front of First Baptist Church in a grass[y] area up to a sidewalk that goes around First Baptist Church.” Officer Caulder began to chase Pryor. Officer Caulder testified that during the chase he heard a “loud thud” that sounded “like something solid had hit the pavement in that area.” He went to the area of the “thud” and found a pistol — a High Point .45 caliber. Officer Caulder stated that he did not see anyone other than law enforcement officers in the area before or after Pryor was apprehended and that the area was well lit. The Mississippi Crime Lab tested the pistol for the presence of fingerprints, but Officer Caulder did not personally run any tests and had not read the forensic report containing the results of *384 any of the tests that the Crime Lab had performed on the pistol.
¶ 5. Officer Wilson testified that he saw Pryor run away from Officer Caulder and “noticed [that Pryor] was grabbing something from his waistband area.” Officer Rosamond testified that he spoke with people that lived in the area and received a description of a possible suspect. He broadcast that description to the other officers in the area, and Officer Wilson told him that he had encountered someone that matched that description. Officer Rosa-mond stated that he saw Pryor “running towards Line Street. And [he could] see [Pryor was] carryingf,] in his right hand[,] a black pistol.”
¶ 6. Prior to the close of the evidence, the circuit court informed the jury that Pryor stipulated to being a convicted felon and that the State would not have to present evidence regarding a prior felony conviction.
¶ 7. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

I. JNOV or a New Trial

A. JNOV

¶8. Pryor argues that the circuit court erred in denying his motion for a JNOV, which challenged the sufficiency of the evidence, as there was no proof that he possessed the weapon. See Fullilove v. State, 101 So.3d 669, 672 (¶ 7) (Miss.Ct.App.2012). The Mississippi Supreme Court has stated that when determining whether the evidence is sufficient to support the jury’s verdict, “appellate court[s] view[] the evidence in the light most favorable to the prosecution and ask[] if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jones v. State, 95 So.3d 641, 646 (¶ 18) (Miss.2012) (quoting Gilbert v. State, 48 So.3d 516, 520 (¶ 12) (Miss.2010)) (internal quotation marks omitted).
¶ 9. Mississippi Code Annotated section 97-37-5(1) (Supp.2013) states that “[i]t shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm[.]” Therefore, “[t]o prove possession of a firearm by a convicted felon, the State must prove two things: (1) the [defendant] was in possession of a firearm, and (2) the [defendant] had been convicted of a felony crime.” Henderson v. State, 117 So.3d 636, 638 (¶7) (Miss.Ct.App.2013) (quoting Young v. State, 95 So.3d 685, 688 (¶ 10) (Miss.Ct.App.2011)).
¶ 10. Here, Pryor stipulated that he had a prior felony conviction; therefore, the State did not have to prove the second element. With respect to the first element, the State presented testimony from Officer Caulder that he heard the gun hit the ground while chasing Pryor and that there was no one else in the area except other law enforcement officers. Additionally, after hearing the “thud,” Officer Caulder immediately proceeded to the area where he heard the “thud” and recovered the pistol. Also, Officer Rosamond testified that he saw Pryor running from Officer Caulder and noticed that Pryor was carrying a black pistol in his hand. Viewing the evidence in the light most favorable to the State, we cannot say that the evidence is insufficient to support the jury’s verdict.

B. New Trial

¶ 11. Unlike a request for a JNOV, a request for a new trial challenges the weight of the evidence. Jackson v. State, 90 So.3d 597, 605 (¶ 31) (Miss.2012). *385 When determining whether the circuit court erred in denying a motion for a new trial, appellate courts view the evidence in the light most favorable to the verdict and “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Id. (quoting Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005)). “The motion ... is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Amiker v. Drugs For Less Inc., 796 So.2d 942, 947 (¶ 18) (Miss.2000) (citation omitted).
¶ 12. Viewing the evidence in the light most favorable to the verdict, we cannot say that the circuit court erred in denying Pryor’s motion for a new trial. The State presented testimony that only Pryor and law enforcement officers were in the area on the night that the pistol was found. Officer Rosamond testified that he saw Pryor running with a pistol in his hand, and Officer Caulder testified that he recovered the pistol from the area through which Pryor was running. Accordingly, we cannot say that the jury’s verdict is so contrary to the overwhelming weight of the evidence such that allowing the verdict to stand would sanction an unconscionable injustice. This issue is without merit.

II. Objection to Fingerprint Testimony

¶ 13. Pryor alleges that he was “unduly prejudiced” by the circuit court’s failure to allow Officer Caulder to testify on whether or not Pryor’s fingerprints were on the recovered weapon. During Officer Caulder’s cross-examination, the following exchange took place:
[DEFENSE ATTORNEY]: And you sent this to the crime lab, right?
OFFICER CAULDER: Yes, sir.
[DEFENSE ATTORNEY]: And you instructed the crime lab[,] or somebody did from the police department^] to check for fingerprints, correct?
OFFICER CAULDER: Yes, sir.
[DEFENSE ATTORNEY]: And they found no fingerprints of my client on that gun, did they?
[BY THE STATE]: Objection, Your Honor.
[BY THE COURT]: Sustained. Because I would assume it is a hearsay objection.
The circuit court ultimately determined that anything Officer Caulder knew about the presence of fingerprints on the pistol, “because he didn’t perform fingerprint analysis on it himself[,] is going to be strictly hearsay.”
¶ 14. It should be noted first that Pryor has failed to cite any authority to support his argument. Our supreme court has stated that when a defendant fails to cite authority to support his argument, the appellate court is not obligated to review the issue. Gillett v. State, 56 So.3d 469, 517 (¶ 142) (Miss.2010). As such, this issue is procedurally barred.
¶ 15. Procedural bar notwithstanding, the circuit court did not err by not allowing Officer Caulder to testify to the results of the fingerprint analysis. Officer Caulder testified that he did not run the fingerprint analysis himself and had not read the report regarding fingerprint findings on the pistol, if any. Thus, anything that he would have testified to regarding the results of the analysis would have been inadmissible hearsay—“a statement, other than one made by the declarant while testifying at the trial or hearing, offered in *386 evidence to prove the truth of the matter asserted.” M.R.E. 801(c).

III. Disproportionate Sentence

¶ 16. Pryor claims that his sentence is grossly disproportionate to his crime. “Generally, a sentence will not be disturbed on appeal if it is within the limits prescribed by statute.” Whitlock v. State, 47 So.3d 668, 673 (¶ 16) (Miss.2010). The circuit court sentenced Pryor to life imprisonment, which comports with the applicable habitual-offender statute, Mississippi Code Annotated section 99-19-83 (Rev.2007). Section 99-19-83 provides that if a defendant has been previously convicted of at least two felony offenses, with one of the offenses being a crime of violence, arising out of different transactions at different times, and has been sentenced to and served one year or more, the circuit court must sentence him to life imprisonment.
¶ 17. Here, Pryor stipulated that he was a convicted felon. The State presented evidence that Pryor had two previous felony convictions — one for possession of cocaine and one for robbery. The circuit court sentenced Pryor to more than one year for each crime, and Pryor served more than one year of the sentence for each conviction. Additionally, one of Pryor’s previous felonies — robbery—is a crime of violence. See Magee v. State, 542 So.2d 228, 236 (Miss.1989) (holding that robbery is a crime of violence for purposes of habitual-offender sentencing). Therefore, because Pryor was properly sentenced according to section 99-19-83, we decline to disturb his sentence on appeal. Accordingly, this issue is without merit.

IV. Cumulative Error

¶ 18. As there were no individual errors in the issues raised, there, likewise, can be no cumulative error that requires reversal of the judgment. See Lawrence v. State, 116 So.3d 156, 163 (¶ 37) (Miss.Ct.App.2012).
¶ 19. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE AS A HABITUAL OFFENDER OF LIFE, WITHOUT ELIGIBILITY FOR PAROLE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GRENADA COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.