# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00102-COA

JASON D. STEVENS A/K/A JASON DANIEL          APPELLANT
STEVENS A/K/A JASON STEVENS

v.

STATE OF MISSISSIPPI          APPELLEE

DATE OF JUDGMENT:      11/19/2019
TRIAL JUDGE:      HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:      NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
     BY: W. DANIEL HINCHCLIFF
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
     BY: SCOTT STUART
DISTRICT ATTORNEY:      STEVEN SIMEON KILGORE
NATURE OF THE CASE:      CRIMINAL - FELONY
DISPOSITION:      AFFIRMED - 03/09/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.

### WILSON, P.J., FOR THE COURT:

¶1. Jason Stevens was convicted of grand larceny for stealing a concrete saw and other tools from a construction site. On appeal, Stevens argues that the trial judge erred by overruling his hearsay objections to testimony and evidence that "LeadsOnline," an online database of pawnshop transactions, showed that Stevens pawned a concrete saw several weeks after the subject offense. He also argues that his trial attorney provided ineffective assistance by allowing him to be tried in jail attire (a yellow jumpsuit) and by not requesting jury instructions regarding his jail attire and the LeadsOnline evidence. Finally, he argues

that the evidence did not support his conviction because the jury instructions incorrectly identified the owner of the stolen tools. We find no reversible error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In March 2018, Craig Construction Company was building a power substation in Neshoba County. On Thursday, March 8, 2018, work ended for the week, and Craig Construction's employees stored their tools in a locked trailer on the construction site. The site was surrounded by a chain-link fence with a locked gate.

¶3. On March 12, 2018, Lucas Hale, an employee of Craig Construction, arrived at the construction site and discovered that someone had cut a hole in the chain-link fence and had cut the padlock off the trailer. Hale discovered that several tools were missing from the trailer, including a Husqvarna K760 concrete saw, a nail gun, a circular saw, four drills, an impact wrench, and miscellaneous other tools. Hale estimated that the stolen tools were worth between $2,000 and $2,500.

¶4. A person who lived nearby had seen a "suspicious" vehicle parked at the construction site and had written down the tag number. Investigator Derek Wyatt of the Neshoba County Sheriff's Department determined that the tag number was associated with a vehicle registered to Jason Stevens. Wyatt contacted Stevens, but Stevens told Wyatt that he no longer owned the vehicle. Stevens said he had scrapped the vehicle after hitting a deer.

¶5. Wyatt then ran Stevens's name in "LeadsOnline," an online database of pawnshop transactions. Wyatt testified—over Stevens's hearsay objection—that LeadsOnline showed that on May 1, 2018, Stevens had pawned a Husqvarna K760 concrete saw at AAA Jewelry

2

& Loan, a pawnshop in Starkville. The trial judge overruled Stevens's hearsay objection, noting that Wyatt was "testifying from his investigation." A "LeadsOnline Ticket" for the transaction was also admitted into evidence, again over Stevens's hearsay objection.

¶6. Wyatt subsequently interviewed Stevens at the Neshoba County jail. After signing a *Miranda*[1] waiver, Stevens admitted that he stole the concrete saw and other tools from the construction site. He also admitted that he pawned the concrete saw at AAA Jewelry & Loan in Starkville. Stevens stated "that he did not know where [the other tools] had gotten off to. That over time they had disappeared here and there." He told Wyatt "that he wasn't a bad person. It was just simply when he was on drugs, that he stole things." Stevens only wanted to give an oral statement and refused to give a written statement.

¶7. Hale and Wyatt were the State's only witnesses. Stevens did not testify or call any witnesses. The jury found Stevens guilty of grand larceny, and the court sentenced him to serve five years in the custody of the Department of Corrections as a nonviolent habitual offender.[2] Stevens filed a motion for a new trial, which was denied, and a notice of appeal. On appeal, he raises the three issues noted in the opening paragraph of this opinion.

## ANALYSIS

### I. LeadsOnline Evidence

¶8. Stevens first argues that the trial judge erred by allowing Wyatt to testify that LeadsOnline showed that Stevens had pawned the Husqvarna K760 concrete saw and then

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Stevens had prior convictions for third-offense driving under the influence, burglary of a motor vehicle, burglary of a dwelling, and attempted grand larceny.

by admitting the "LeadsOnline Ticket" documenting the transaction. The State argues that the testimony and evidence was not offered to prove the truth of the matter asserted but rather to explain why Wyatt took the next steps in his investigation, i.e., to explain why he interviewed Stevens at the Neshoba County jail. "We employ an abuse-of-discretion standard when reviewing claims that the trial judge erred by admitting hearsay." *White v. State*, 48 So. 3d 454, 456 (¶9) (Miss. 2010) (footnote omitted).

¶9.     An out-of-court statement is hearsay if it is offered "to prove the truth of the matter asserted." M.R.E. 801(c). Thus, to determine whether a statement is hearsay we must first determine the purpose for which it was offered and admitted. *Smith v. State*, 258 So. 3d 292, 309 (¶50) (Miss. Ct. App. 2018). Our Supreme Court and this Court have held repeatedly that out-of-court "[s]tatements do *not* constitute hearsay when admitted" not to prove the truth of the matter asserted but rather "to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020) (emphasis added) (quoting *Smith*, 258 So. 3d at 309 (¶52) (quoting *Fullilove v. State*, 101 So. 3d 669, 675 (¶20) (Miss. Ct. App. 2012))).

¶10.    In this case, Wyatt testified that he ran Stevens's name in the LeadsOnline database and found that he had pawned a concrete saw in order to explain why he focused on Stevens as his "main suspect" and why he then interviewed Stevens about the theft at the Neshoba County jail. In other words, his testimony was offered "to explain [the] course of [his] investigation" and his "motivation for [his] next investigatory step." *Id.* Therefore, we conclude that the trial judge did not abuse his discretion by overruling Stevens's initial

hearsay objection.

¶11.   Nonetheless, we do find that the trial judge abused his discretion by admitting the "LeadsOnline Ticket" documenting the transaction into evidence. By the time the document was offered into evidence—and Stevens again objected—Wyatt had already explained why his investigation focused on Stevens as the main suspect. There was no need to offer further documentary evidence of the pawnshop transaction. At that point, the only purpose of the additional evidence was to show that Stevens had, in fact, pawned a Husqvarna concrete saw at a pawnshop in Starkville several weeks after the construction site theft—i.e., to prove the truth of the matter asserted. Accordingly, the document was hearsay and should not have been admitted.

¶12.   Although the document was admitted in error, we conclude that the error was harmless and does not require reversal. *See Chaupette v. State*, 136 So. 3d 1041, 1047 (¶12) (Miss. 2014) ("We will not reverse a conviction based on a harmless error."). "For a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." *Jackson v. State*, 245 So. 3d 433, 439 (¶32) (Miss. 2018) (quoting *Pham v. State*, 716 So. 2d 1100, 1102 (¶12) (Miss. 1998)). The error in this case was harmless because the document admitted into evidence was essentially cumulative of other admissible evidence. Wyatt properly testified that Stevens himself admitted that he pawned the Husqvarna concrete saw at the Starkville pawnshop. Given that Stevens's car was seen parked at the construction site and that Stevens subsequently confessed both to the theft and to pawning the saw, we cannot say that the admission of the

5

LeadsOnline ticket prejudiced his defense or adversely affected his substantial rights.[3]

## II. Ineffective Assistance of Counsel

¶13. The defendant's constitutional "right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). A claim of ineffective assistance of counsel may be asserted on direct appeal if the defendant is represented by appellate counsel who did not represent him at trial. *Ellis v. State*, 281 So. 3d 1092, 1099 (¶20) (Miss. Ct. App. 2019). "Generally," however, such "claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (quotation marks and other brackets

---

[3] The better practice in this case would have been to obtain evidence of the pawnshop transaction that could have been admitted to prove the truth of the matter asserted. The LeadsOnline ticket shows that Wyatt learned of the transaction two days after it occurred, and he obviously contacted the pawnshop because he later returned the concrete saw to Craig Construction. The law requires pawnshops to maintain detailed records of all pawn transactions and to provide those records to law enforcement upon request. Miss. Code Ann. § 75-67-305 & -309 (Rev. 2016). The State should have called an owner or employee of the pawnshop to authenticate records of Stevens's transaction, which would have been admissible as substantive evidence. *See* M.R.E. 803(6). Such a witness also might have been able to identify Stevens or even authenticate surveillance video of the transaction. Any such evidence would have been admissible as substantive evidence, would have strengthened the State's case, and would have avoided Stevens's objection and argument on appeal. Thus, while the admission of the LeadsOnline ticket was harmless error in this case, we encourage the State to avoid this problem in the future by obtaining evidence of pawnshop transactions that is admissible to prove the truth of the matter asserted.

omitted). In addition, we may address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

¶14. To prevail on a claim of ineffective assistance, the defendant must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The defendant "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶15. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Branch v. State*, 882 So. 2d 36, 52 (¶26) (Miss. 2004) ("Trial counsel is presumed competent, and the burden of proving that counsel's performance was deficient and prejudicial falls upon the Appellant."). Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks omitted).

¶16. Stevens argues that his trial counsel provided ineffective assistance by permitting him to be tried in jail attire (a yellow jumpsuit), by not requesting a jury instruction that Stevens's attire had no bearing on his guilt or innocence, and by not requesting a jury instruction on the limited purpose for which the LeadsOnline evidence was admitted. We address these

arguments in turn.

¶17.    As to the jail attire, "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes." *Estelle v. Williams*, 425 U.S. 501, 512 (1976).  Thus, Stevens had a right not to be tried in jail attire, and he would have been entitled to civilian attire had he objected.  However, there is no "compulsion" and, hence, no "constitutional violation" when the defendant fails to object to being tried in jail attire.  *Id.* at 512-13; *accord, e.g.*, *Bell v. State*, 168 So. 3d 1151, 1152-53 (¶¶4-6) (Miss. Ct. App. 2014).

¶18.    Here, Stevens concedes that he did not object to being tried in a yellow jumpsuit.  Rather, he argues that his attorney provided ineffective assistance by failing to object and then pointing out his yellow jumpsuit during voir dire.  Counsel stated:

> Now, Mr. Stevens is sitting over here at the table with me, and I'm sure that you all are aware that he's wearing a yellow jumpsuit.  Now, all that means is that he was not able to make bail in this case.  It does not mean that he's more or less guilty of this charge.  In fact, the defendant is cloaked in what is called the presumption of innocence, which means, as we sit here today, the law presumes that Mr. Stevens is innocent.
>
> Is there anybody in here who tends to think Mr. Stevens might be guilty because of the clothing that he's wearing today?

The attorney's question drew no response from the potential jurors.

¶19.    We cannot say that the attorney provided constitutionally ineffective assistance of counsel by the way he handled this issue.  As the United States Supreme Court observed, "[I]nstances frequently arise where a defendant prefers to stand trial before his peers in prison garments.  The cases show, for example, that it is not an uncommon defense tactic to

8

produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Estelle*, 425 U.S. at 508 (collecting cases). This might have been a valid trial strategy in this case, given that Stevens had confessed and that the proof of his guilt was strong. As stated above, Stevens "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation marks omitted). Stevens cannot meet this burden.

¶20. We also hold that counsel did not provide ineffective assistance by not requesting a jury instruction regarding Stevens's prison attire. The trial judge gave a series of *six* jury instructions regarding Stevens's presumption of innocence, the State's burden to prove guilt beyond a reasonable doubt, and the jury's duty to acquit if the State failed to meet its burden. The instructions thoroughly emphasized the jury's duty and the State's high burden. Counsel did not provide ineffective assistance by not requesting yet another instruction pertaining specifically to Stevens's jumpsuit.

¶21. Finally, we hold that counsel did not provide ineffective assistance by not requesting a jury instruction regarding the limited purpose for which the LeadsOnline evidence was admitted. "We presume that counsel's decision not to request a limiting instruction was within the ambit of trial strategy." *Curry v. State*, 202 So. 3d 294, 301 (¶24) (Miss. Ct. App. 2016). We have recognized that "such an instruction has the potential to do the defendant more harm than good," *id.*, because "a limiting instruction can actually focus the jury's attention on sensitive information." *Herrington v. State*, 102 So. 3d 1241, 1246 (¶18) (Miss. Ct. App. 2012) (quotation marks omitted) (quoting *Moss v. State*, 977 So. 2d 1201, 1214

9

(¶32) (Miss. Ct. App. 2007)).  Therefore, "the decision . . . not to request a limiting instruction falls under the umbrella of trial strategy." *Id.*  Accordingly, this argument is also without merit, and Stevens fails to show that he received ineffective assistance of counsel at trial.

### III.    Sufficiency of the Evidence

¶22.    Finally, Stevens argues that the evidence was insufficient to support his conviction because the indictment and the jury instruction on the elements of the offense erroneously described the stolen items as "the personal property of Lucas Hale d/b/a Craig Construction Company."  At trial, Hale testified that he was not an owner of Craig Construction but "just an employee."  He testified that the tools were not his "personal tools" but that he was "in charge of them . . . for Craig Construction."  On appeal, Stevens argues that the jury could not have convicted him because the jury could not have found that he stole Hale's property or that Hale was doing business as Craig Construction.

¶23.    In support of his argument, Stevens cites *Bester v. State*, 222 Miss. 706, 77 So. 2d 270 (1955), which stated,

> It is well-settled that in a prosecution for larceny the State must prove ownership of the stolen property as alleged in the indictment beyond a reasonable doubt. *Johnson v. State*, 186 Miss. 405, 191 So. 127.  And where ownership of stolen property is laid in a person named, the jury should be instructed that the ownership of the property must be proved as laid.

*Id.* at 713, 77 So. 2d 273 (other citation omitted).  Stevens argues that he is entitled to a judgment of acquittal because the jury could not have found that the owner of the stolen property was as alleged in the indictment or set out in the jury instruction.

10

¶24.    "However, the 'strict rule' from *Bester* . . . , which was taken from *Johnson v. State*, 186 Miss. 405, 412, 191 So. 127, 129 (1939), has been 'implicitly overruled' by several cases." *Wilson v. State*, 101 So. 3d 1182, 1186 (¶13) (Miss. 2012) (quoting *Cooper v. State*, 639 So. 2d 1320, 1323 (Miss. 1994) (citing *Bullock v. State*, 391 So. 2d 601, 609 (Miss. 1980); *Mahfouz v. State*, 303 So. 2d 461, 462-63 (Miss. 1974))).  More recently,

> [t]he Mississippi Supreme Court has stated: "As a general rule of law in a prosecution for larceny, an allegation of the ownership of stolen goods is supported by proof of *any* legal interest or special property in the goods; for example, where the person or corporation named in the indictment is in lawful possession as a bailee or common carrier."

*Wilson*, 101 So. 3d at 1186 (¶14) (quoting *Mahfouz*, 303 So. 2d at 462-63).

¶25.    Thus, in *Wilson*, the defendant was convicted of stealing the "personal property of Cook Tractor" even though the evidence at trial showed that the property (a truck) was actually owned by William Cook individually. *Id.* at 1187 (¶18).  The truck was taken from the premises of Cook Tractor after Cook "had left it within the fence of the business over the weekend." *Id.*  We affirmed the conviction on appeal, reasoning that "[r]egardless of whether Cook or Cook Tractor had title ownership of the truck, [the defendant] did not have the right to take the truck," and "[t]here was no defense that could have been mounted against Cook Tractor that could not have been mounted against Cook." *Id.*

¶26.    In addition, the Supreme Court has held that any person "who has lawful possession of the property at the time of the theft" may be identified in the indictment as the property's owner. *Mahfouz*, 303 So. 2d at 463.  Furthermore, such an indictment is considered valid and need not be amended to reflect the true or technical owner of the property. *Id.*

11

¶27. Here, Hale was not the owner of the stolen tools, but he was in "lawful possession of [them] at the time of the theft" because his employer, Craig Construction, had entrusted him with them. Furthermore, the detailed indictment in this case gave Stevens clear notice of the charges against him, and there was no defense that Stevens could have asserted against Craig Construction that he could not have asserted against Hale. Finally, because it was permissible for the indictment and jury instruction to name Hale as the owner of the stolen property, the inaccurate use of the term "d/b/a" was "mere surplusage." *Edmonson v. State*, 301 So. 3d 108, 113 (¶21) (Miss. Ct. App. 2020) (holding that an indictment's use of a "d/b/a" was "mere surplusage that [did] not affect the sufficiency of the indictment"); *see also S. Ins. Co. v. Consumer Ins. Agency Inc.*, 442 F. Supp. 30, 31-32 (E.D. La. 1977) (stating that a "d/b/a" is "much like" an "alias" or an "a/k/a" and "does not create an entity distinct from the person" named). In summary, there was ample evidence that Stevens stole the tools identified in the indictment and that those tools had been entrusted to Hale's possession. Accordingly, this issue is also without merit.

## CONCLUSION

¶28. Although the LeadsOnline ticket should not have been admitted into evidence, that error was harmless in light of the other evidence presented. In addition, Stevens's trial counsel provided effective assistance, and the State presented sufficient evidence to support Stevens's conviction for grand larceny.

¶29. **AFFIRMED.**

**GREENLEE, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. BARNES, C.J., AND WESTBROOKS, J., CONCUR IN PART AND IN**

12

**THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**